# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: | Chapter 11 |
| CLASS A PROPERTIES TWENTY, LLC, | Case No. 11-09680 |
| Debtor. | The Honorable Jacqueline P. Cox |

## STIPULATION AND AGREED FINAL CASH COLLATERAL ORDER

THIS MATTER COMING before the Court on the Motion for Order Permitting Debtor to Use Cash Collateral Belonging to First Bank (the "Motion") filed by CLASS A PROPERTIES TWENTY, LLC, Debtor; the Objection to the Motion filed by FIRST BANK (the "Bank"); the agreement of the parties announced in open court at the hearing on the Motion held on June 1, 2011; and the Court being fully advised in the premises;

**THE PARTIES HEREBY STIPULATE AND AGREE AS FOLLOWS:**

A. Prior to March 9, 2011, the Bank entered into secured financing arrangements (the "Loans") with the Debtor evidenced by the following described documents (collectively, the "Prepetition Loan Documents"):

1. Promissory Note dated March 30, 2007, in the original principal amount of $1,934,500.00.

2. Mortgage dated March 30, 2007, and recorded on April 2, 2007, in the Office of the Recorder of Deeds of Peoria County, Illinois, as Document No. 07-09628.

3. Rider-Related Loan Documents which are dated March 30, 2007, and recorded on April 2, 2007, as Document No. 07-9629.

4. Assignment of Rents and Leases made by the Debtors to the Bank on March 30, 2007, and recorded on April 2, 2007, in the Office of the Peoria County Recorder of Deeds, as Document No. 07-09630.

      5.      Copy of a UCC-1 Financing Statement recorded in the Office of the Peoria County Recorder of Deeds on May 17, 2010, as Document No. 16891.

B.    The Bank has a valid, first-position, priority lien on the following described real property of the Debtor:

> A part of the southwest ¼ of Section 29, Township 9 North, Range 8 East of the Fourth Principal Meridian, more particularly bounded and described as follows: beginning at the southeast corner of said southwest ¼ in the intersection of West Forrest Hill Avenue with North University Street, running thence north along the said quarter section line, a distance of 225 feet to a point, which is the place of beginning of the tract to be described; thence running westerly parallel with the south line of said quarter section along the northerly line of the premises now owned by the University National Bank, a distance of 260 feet; thence parallel with the east line of said quarter section line southerly along the westerly line of said premises owned by said University National Bank, a distance of 225 feet to the south line of said Section 29 in West Forrest Hill Avenue; thence West along said Section line in West Forrest Hill Avenue, a distance of 40 feet; thence northerly and parallel with the easterly line of said quarter section line, a distance of 460 feet; thence easterly and parallel with the south line of said quarter section line, a distance of 300 feet, more or less, to the Center Section Line in Northern University Street; thence southerly along said quarter section line, a distance of 235 feet to the place of beginning, excepting therefrom that portion of premises in question conveyed to the State of Illinois, for the use of the Department of Public Works and Buildings, by deeds recorded May 15, 1962, in Book 1230, Page 674 and in Book 1230, Page 675, situated in Peoria County, Illinois.
>
> Commonly known as:   University Centre, 3125-3127 North University St, Peoria, Illinois, 61604
>
> PIN:   14-29-376-021.

(the "Real Property").

C. The Bank's claim is further secured by the rents generated by the Real Property ("Cash Collateral") which fall within the definition of "cash collateral" under Section 363(a) of the Bankruptcy Code.

D. The Real Property falls within the definition of "single asset real estate" within the meaning of Section 101(51B) of the Bankruptcy Code.

E. As of March 9, 2011, the Debtor is indebted to the Bank in the amount of $1,877,019.76 (the "Indebtedness"), calculated as follows:

| | | | |
|---|---|---|---:|
| a. | Unpaid principal as of 03/9/11 | $ | 1,829,302.32 |
| b. | Unpaid interest accrued as of 03/9/11 | $ | 42,366.70 |
| c. | Late charges owed as of 03/9/11 | $ | 783.24 |
| d. | Attorneys' Fees | $ | 4,567.50 |
| | **Total** | $ | **1,877,019.76** |

The Pre-Petition Debt does not include any interest, late charges, costs and fees, including, without limitation, attorneys' fees and expenses that have accrued and continue to accrue after March 9, 2011.

F. The Bank is willing to enter into this arrangement with the Debtor and to allow Debtor's limited use of the Cash Collateral, but only on the terms and conditions set forth herein.

G. The parties agree that good cause has been shown for entry of this Order.

H. The parties agree that this Order has been negotiated in good faith and at arm's length.

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. For the purposes of this order and Debtor's Chapter 11 Bankruptcy Case, The Bank has a valid, binding, perfected first priority lien and security interest in the Real Property.

2. The Debtor is hereby authorized to use Cash Collateral solely for the following categories of operating expenses up to and not exceeding the monthly caps set forth below (collectively, the "Authorized Cash Collateral Expenditures"):

| Category | Cap |
|---|---|
| Mortgage | $ 6,500.00 |
| Real Estate Taxes | 4,014.58 |
| Administration | 1,275.00 |
| Property Insurance | 250.00 |
| Electric | 219.00 |
| Water | 235.00 |
| Sewer | 43.25 |
| Garbage Disposal | 480.00 |
| Accountant | 125.00 |
| Common Area Maintenance | 325.00 |
| TOTAL ALLOWED MONTHLY EXPENSES | $ 13,231.83 |

In addition, Debtors may use cash collateral for non-budgeted expenses as set forth below:

(a) Not exceeding $50.00 per expense, and not exceeding $300.00 in the aggregate any one month;

(b) With prior consent of First Bank, or the Court; or

(c) An emergency involving Health and Safety or necessary to preserve the property provided that written notice is provided to the Bank within forty-eight (48) hours of such use of cash collateral.

4

3. In order to adequately protect the security interests of the Bank pursuant to Section 363 of the Bankruptcy Code, the Bank is hereby granted a replacement, automatically perfected security interest and lien in an amount equal to the Cash Collateral used by the Debtor in all of the Debtor's real and personal property related to the Real Property and all proceeds, products, rents and/or profits thereof related to the Real Property (such collateral, collectively, the "Replacement Collateral" and replacement security interests and liens granted in the Replacement Collateral, collectively, the "Replacement Liens"). It is expressly understood and agreed by the Bank and the Debtor that Replacement Collateral shall not include, and that the Bank shall not have a Replacement Lien on, any personal funds contributed by any or all of the Debtor's shareholders. The Bank's Replacement Liens shall have the same validity, enforceability and priority as the pre-petition liens and security interests of the Bank.

4. The Bank's Replacement Liens granted pursuant to this Final Order shall constitute valid and perfected security interests and liens with the priority provided herein upon the Replacement Collateral, without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the liens of the Bank in and to the Replacement Collateral or to entitle the Bank to the priorities granted herein. Notwithstanding the foregoing, the

Debtor may execute and the Bank may file or record financing statements or other instruments to evidence and to perfect the liens authorized hereby, provided, however, no such filing or recordation shall be necessary or required in order to create or perfect any such lien.

5. As additional adequate protection, the Debtor shall continue to make monthly payments to the Bank in the amount of $6,500.00 until confirmation of a Chapter 11 plan. Adequate protection payments shall increase to the extent that the Debtor realizes an increase in operating income after the date of this Order (i.e., resulting from the Debtor locating a tenant or tenants for vacant space at the Real Property).

6. The Debtor shall keep the Real Property insured against loss or damage resulting from fire, flood or other hazards, casualties and contingencies with replacement cost endorsements (without depreciation) in such amounts as approved by the Bank. This insurance shall be carried with companies approved by the Bank and the policies and renewals thereof shall be deposited with and held by the Bank. The Debtor shall prepare and/or execute any and all documents in favor of the Bank to preserve its secured claim in the Real Property and shall provide the Bank with copies of all insurance policies presently and hereinafter in effect.

7. Debtor shall duly pay all post-petition taxes, personal and real property taxes, assessments and governmental and other charges, levied or imposed, which are, or which if unpaid might become, a lien or charge upon the Real Property or Cash Collateral.

8. The Debtor shall account for all expenses authorized herein and, upon written request of the Bank, shall deliver documents evidencing the expenses.

9. All funds received by the Debtor that are derived from the Bank's collateral shall be deposited in the Debtor's debtor-in-possession account.

10. The Debtor shall permit the Bank to audit the books and records of Debtor at all times reasonably requested by the Bank and to make copies thereof or extracts therefrom, and permit the Bank access to the Debtor's premises at any time during normal business hours upon seventy-two (72) hours prior written notice.

11. The following provisions apply now and will be incorporated into any Chapter 11 Plan of Reorganization or Chapter 11 Plan of Liquidation filed by the Debtor during this case and any and all successor cases:

    (a) The Debtor shall continue to aggressively market the vacant premises ("Vacant Premises") located within the Real Property such that the entirety of the Vacant Premises shall be leased to one or more third party tenants acceptable to Bank on or before April 30, 2012. Bank agrees not to withhold its consent to a proposed lease or leases, as applicable, of the Vacant Premises in bad faith; <u>provided, however</u>, that Bank has no obligation to consent to a proposed lease of the Vacant Premises for which the aggregate monthly base rent (i.e., rent exclusive of common

area charges, real estate tax reimbursement payments, and other similar pass-through costs) is less that Twelve Thousand Dollars ($12,000.00) per month for all vacant space existing at time of entry of this order.

(b) In addition to aggressive marketing of the Vacant Premises, Debtor agrees to aggressively market the Real Property for sale such that the Real Property shall be sold privately to a third party buyer acceptable to Bank under Section 363 of the Bankruptcy Code within the same time period (closing by April 30, 2012). If an Order approving such sale has not been entered on or before February 29, 2012, then the Real Property shall be sold at public auction with a closing not later than April 30, 2012. Bank shall have the absolute right to credit bid the remaining principal indebtedness and accrued interest owed by Debtor to Bank at such public auction.

(c) Debtor shall keep Bank apprised of any and all material discussions and negotiations pertaining to the lease of the Vacant Premises and the sale of the Real Property. On or before the 15th day of each month commencing July 15, 2011, Debtor will tender to Bank a report describing its progress in leasing the Vacant Premises and in selling the Real Property (each a "Monthly Progress Report" and,

collectively, the "Monthly Progress Reports") for the preceding calendar month (the "Reporting Period"). Each Monthly Progress Report shall include copies of any and all correspondence, letters of intent, agreements, offers, or other similar documents received by Debtor during the applicable Reporting Period and pertaining to the lease of the Vacant Premises or the sale of the Real Property, as applicable.

(d) From the date of this Order through February 29, 2012, the Debtor shall have the ability, but not the obligation, to secure a post-petition loan from one or more third parties with the intent that the proceeds of such loan will satisfy all or part of the Indebtedness. Nothing contained herein shall be interpreted as or deemed to be an agreement by Bank to waive any remaining deficiency after application of any and all post-petition loan proceeds towards the Indebtedness. In the event that Bank, in the exercise of its sole and absolute discretion, agrees to accept such post-petition proceeds in full or partial satisfaction of the Indebtedness, then Debtor shall no longer be required to comply with paragraphs 11(a), (b) and (c).

(e) Each of the following events shall constitute an event of default ("Event of Default") hereunder:

    (i) An Order entered dismissing this case, converting the case to a case under Chapter 7 of the Code, appointing a trustee under Chapter 11, appointing an examiner to perform any duties of a trustee other than those set forth in Section 1106(a)(3) or (a)(4) of the Code, or terminating the authority of the Debtor to conduct business; or

    (ii) Any violation by the Debtor of any provision of this Order.

  (f) Upon the occurrence of an Event of Default of this Order, Bank shall transmit a notice of default to the Debtor (by first class mail) and its attorney (by first class mail, by email at pnbach@bachoffices.com or by facsimile to (847) 564-0985), and Debtor shall have fourteen (14) days from the date of such notice to cure said default. If the default is not cured within the cure period, the automatic stay shall immediately terminate without further order of the Court and the Debtor shall immediately cease using Cash Collateral, segregate and hold all Cash Collateral in trust for the benefit of the Bank.

12. If any Chapter 11 Plan is proposed or confirmed without incorporating the terms and conditions of Paragraph 11 above, such Plan shall be deemed to be proposed in bad faith, and Bank shall be entitled to object to such Plan. Unless otherwise ordered by the Court after notice to Bank and an

opportunity to be heard, in the event any Plan omitting the terms and conditions of Paragraph 11 is confirmed, Bank may immediately move for relief from the automatic stay.

13. The Debtor is authorized and directed to perform all acts and execute and comply with the terms of such other documents, instruments and agreements which the Bank may reasonably require and/or which may otherwise be deemed necessary by the Bank to effectuate the terms and conditions of this Order.

14. No delay or failure to exercise any right, power or remedy accruing to the Bank upon breach or default by the Debtor under this Order or any document or agreement shall impair any such right, power or remedy of the Bank, nor shall it be construed to be a waiver of any such breach or default, nor an acquiescence therein, nor of any breach or default heretofore or hereafter occurring.

15. The provisions of this Order shall be binding upon and inure to the benefit of the Bank and the Debtor and their respective successors and assigns.

16. All defenses or claims of every kind or nature, whether existing by virtue of state, federal Bankruptcy or non-bankruptcy law, by agreement or otherwise, against the Bank, the Indebtedness or the Collateral, as such defenses or claims may presently exist or in the future, whether known or unknown, are hereby forever waived, relinquished and released by the Debtor, and its successors and assigns, against the Bank, its

successors and assigns and its officers, agents, servants, employees and attorneys, including without limitation, any affirmative defense, counterclaim, setoff, deduction or recoupment.

17. Nothing in this Order shall bar creditors or a subsequent Chapter 7 or Chapter 11 trustee from challenging the extent, validity or priority of the Bank's pre- or post-petition liens and security interests.

18. This Order integrates all terms and conditions mentioned herein or incidental hereto, and supersedes all prior negotiations, whether written or oral, and prior writings with respect to subject matter hereof to the extent they are inconsistent with the terms of this Order.

19. If any provision of this Final Order is hereafter modified, vacated or stayed by subsequent order of this or any other Court for any reason, such modification, vacation, or stay shall not affect in any way whatsoever the validity of any liability incurred pursuant to this Final Order and prior to the later of (i) the effective date of such modification, vacation, or stay; or (ii) the entry of the order pursuant to which such modification, vacation, or stay was established. Such modification, vacation, or stay shall not affect in any way whatsoever the validity, priority, or enforceability of the Bank's Replacement Liens.

20. The terms and provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order (a) confirming a Chapter 11 plan; (b) converting the case into a case under Chapter 7 of the Code; (c) dismissing any case; or (d) pursuant to which this Court

abstains from hearing the case or any successor cases.

21. That while the Debtor adheres to the agreement, The Bank hereby agrees not to take any further actions to collect the amount of the loan and all applicable costs and interest from the individuals named as defendants in the litigation currently pending in the Circuit Court of the Tenth Judicial Circuit, Peoria County, Illinois, styled *First Bank v. Altamirano et al.*, Case No. 11 L 81.

22. This Court shall retain jurisdiction to resolve issues which arise pursuant to this Final Order.

Dated: _____, 2011.

                                                                Judge Jacqueline P. Cox

| Approved as to Form and Substance: | Approved as to Form and Substance: |
|---|---|
| **FIRST BANK** | **CLASS A PROPERTIES TWENTY, LLC, DEBTOR** |
| /s/Mark A. Bogdanowicz | /s/*Penelope N. Bach* |
| Timothy J. Howard, ARDC No. 01271202 | Penelope N. Bach, ARDC No. 06301322 |
| Mark A. Bogdanowicz, ARDC No. 06301322 | Bach Law Offices |
| Howard & Howard Attorneys PLLC | P.O. Box 1285 |
| 211 Fulton Street, Suite 600 | Northbrook, Illinois 60065 |
| Peoria, Illinois 61602 | Telephone: (847) 564-0808 |
| Telephone: (309) 672-1483 | Facsimile: (847) 564-0985 |
| Facsimile: (309) 672-1568 | Email: pnbach@bachoffices.com |
| Email: THoward@howardandhoward.com | |
| MBogdanowicz@howardandhoward.com | |

AND

L. Judson Todhunter, ARDC No. 2840510
Howard & Howard Attorneys PLLC
200 South Michigan Avenue
Chicago, Illinois 60604-2401
Telephone: (312) 372-4000
Facsimile: (312) 939-5617
Email: LTodhunter@howardandhoward.com